Charles **WEINREB**, Plaintiff,

v.

**UNITED MEDICAL SERVICE, INC.,** Defendant.

Nos. 74 Civ. 5252, 74 Civ. 5703.

United States District Court, S. D. New York.

April. 1, 1975.

**46**

Charles Weinreb, M.D., pro se.

Paul J. Curran, U. S. Atty., S. D. N. Y., for defendant; by Gregory J. Potter, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, Annette Blum, Asst. Regional Atty., Dept. H. E. W., of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff, a practicing New York City physician, initially commenced these two actions in the Small Claims Court division of the New York City Civil Court, to recover $870.60 allegedly due him for medical services rendered to patients participating in what is commonly referred to as the Medicare program.[1] Defendant is an insurance carrier which has contracted with the Federal Government[2]—specifically, the Secretary of the Department of Health, Education and Welfare—to administer the benefit provisions of the Medicare program. Since defendant acts as the duly authorized agent of the United States, the actions were removed to this Court pursuant to 28 U.S.C. § 1442(a)(1).[3]

Defendant now moves to consolidate the actions and to dismiss the consoli-

1. Health Insurance for the Aged, Title XVIII, Part B of the Social Security Act, 42 U.S.C. § 1395 et seq.

2. Pursuant to § 1842 of the Social Security Act, 42 U.S.C. § 1395u.

3. § 1442. Federal officers sued or prosecuted
(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

dated action for failure to exhaust administrative remedies. Since plaintiff has consented to consolidation, the only issue remaining for determination is that of exhaustion.

The underlying facts in this case are as follows: plaintiff, in the course of his medical practice, treats patients who are enrolled under Part B of the Medicare program. He then either applies to defendant directly for payment or receives payment from his patients who are in turn reimbursed by defendant. Both types of claims are routinely and promptly paid by defendant subject to its right to review the correctness of such payment in light of any information later uncovered. According to the affidavit of Alexander V. Busby, the defendant's Director of Utilization Review, defendant became aware in the routine review of claims assigned to plaintiff that a possible over-utilization of Medicare benefits had occurred. As a result, a representative sample of plaintiff's claims reflecting his treatment of Medicare beneficiaries was referred to the Peer Review Committee for the Medical Society of the County of New York,[4] which after having met with plaintiff, confirmed defendant's tentative conclusion that plaintiff had been overpaid in the amount of $14,457.71.

On August 14, 1974 plaintiff was formally advised in writing of this determination and that he had the option either of refunding the monies to defendant or of having amounts due him from present and future as yet unpaid claims used to offset the amount of overpayment until such time as the whole amount had been

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

4. 42 U.S.C. § 1320c authorizes such a procedure.

recovered. Plaintiff was given two weeks to reply and to seek a hearing to review the overutilization determination which he failed to do. By letter dated September 27, 1974, plaintiff was informed that in light of his silence, payments on any future claims were being suspended to offset the $14,457.71 overpayment. Without requesting the administrative review available to him, plaintiff instituted the present actions to recover a portion of the monies withheld by defendant pursuant to its September 27th letter.

■ The Social Security Act requires a Medicare carrier to establish internal procedures whereby review may be had of claims as to which there are disputes. Section 1395u(3)(C) of Title 42 provides as follows:

"Each such contract shall provide that the carrier—will establish and maintain procedures pursuant to which an individual enrolled under this part will be granted an opportunity for a fair hearing by the carrier, in any case where the amount in controversy is $100 or more, when requests for payment under this part with respect to services furnished him are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy;"

The legislative history reveals that the mandatory review procedures established pursuant to this action were intended to be the exclusive remedy for challenging a carrier's decision as to the amount of benefits to be paid. As noted by Senate Finance Committee Report No. 404, of June 30, 1965, Vol. 1 of 1965 U.S.Code Cong. & Admin.News at p. 1995,

"Under the supplemental plan, carriers, not the Secretary would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantially smaller amounts than under Part A . . . It is intended that the reme-

*dies provided by these review procedures shall be exclusive."* (emphasis supplied).

■ In accordance with its statutory duty, defendant has established a review procedure, of which plaintiff was informed but did not avail himself. The conclusion is inescapable, therefore, that plaintiff failed to exhaust the exclusive administrative remedies open to him, having deliberately refused to respond to defendant's letter of August 14, 1974 by which he was specifically informed of such remedies. Because of plaintiff's failure to pursue his administrative remedies with respect to defendant's determination of overutilization, this Court cannot now review that determination. Kingsbrook Jewish Medical Center v. Richardson (2d Cir. 1974) 486 F.2d 663, 666–7, Aquavella v. Richardson (2d Cir. 1971) 437 F.2d 397, 402. The Court in *Aquavella, supra,* in a different context, observed (at 402)

"Where the Medicare Act establishes procedures for review of the Secretary's decision, a court may not review that decision by any other means."

Had plaintiff exercised his right to a hearing, he would have had an opportunity to challenge the manner in which defendant determined utilization, as well as the amount thereof. By foregoing that opportunity, plaintiff deprived defendant of a chance to correct its own errors, if any. If plaintiff pursues his administrative remedies, he may be successful in vindicating his rights and this Court may never have to intervene. McKart v. United States (1969) 395 U. S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194. In fact, any ultimate judicial review of defendant's actions "may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertises." (*Id.,* at 194, 89 S.Ct. at 1663.)

Prior to oral argument on the instant motions, all of plaintiff's administrative remedies had been foreclosed. However,

defendant then represented in open court that it would, if so requested, re-open its proceedings and extend the time within which plaintiff may pursue same. Taking these representations into account, the Court grants defendant's motions to consolidate and to dismiss, on condition that plaintiff be permitted—with no further delay—to pursue his administrative remedies. If plaintiff fails within two weeks to avail himself of the opportunity to pursue his administrative remedies, defendant may submit an unconditional order of dismissal.

So ordered.